It has always been a fundamental precept of this Court's jurisprudence that awards of counsel fees are reserved for a very limited universe of circumstances. And they typically involve cases, as this Court found in Old Reliable just recently, that generally involve ethical or unprofessional conduct by a party or its attorneys. In this case, there was no such conduct, nor did the District Court ever find any such conduct. So a threshold question that we believe needs to be answered so we can get into the right standard to be applied in determining whether to uphold the District Court's award is, was there litigation misconduct here? Did the District Court find it? And if the District Court is found to have found litigation misconduct, were those findings clearly erroneous? When the District Court is summarizing its conclusions, it says the fees and expenses incurred were reasonable in light of the scope of the patent litigation, the magnitude of the damages sought, and MARCTEC's litigation misconduct. Yes, Your Honor, and that is the only place in the entire decision where the word misconduct can be found. And notably, it's in the section where the Court is dealing with the reasonableness of the fees. And it follows a sentence where the Court acknowledges that MARCTEC did not disagree with the reasonableness of the fees. What's important here, and I think it's critical to see, that while the District Court, as it was free to do, adopted as its findings what was proposed to it by courts on the merits of each of the issues, when it came to an entire section of the proposed findings that presented on the attorney fee motion, the District Court completely excised. It's the only instance throughout the District Court's finding where it completely excised an entire section in which conduct was characterized as misconduct. Earlier... Could we search the facts that were found and make a determination as to whether that supports a finding of litigation misconduct or vexatious litigation? Well, if we are to do that, and presumably the Court could do that, but the important thing is the acts that were complained of, and I'm prepared to address each of them and indicate why they are not litigation misconduct even if they occurred. And in most instances, in fact in all instances, we contend they did not occur. We think it's notable... We can't...we can't...I mean we have to accept the findings of fact that were made by the trial court. Unless clearly erroneous. Okay. And we contend that at least certain of those findings were indeed clearly erroneous. Well, as we proceed on that path, is your position that it's irrelevant whether we might be inclined to sustain the view that the litigation was frivolous? I'm sorry, Your Honor? No, you're saying it doesn't matter whether the litigation was frivolous as long as there was no misconduct, then there could be no attorney's fees. Is that what I hear you saying? No, Your Honor. What I'm saying is, in order to determine the standard by which the frivolity, if you will, of the case must be judged... No, that wasn't my question. ...we have to determine was there litigation misconduct. Frivolous means, as we understand it from all of this Court's decisions dating back to Brooks, Serio, Wedgetail, Old Reliable reaffirms it, as does the Eilor case earlier this year, that if... that what frivolous litigation means in the context of those cases is that unless you have inequitable conduct in procurement or acts of litigation misconduct, you need two things to be frivolous. That was my question, that there's no way that litigation can be frivolous if, in fact, the premises have no support or any of the other reasons in other areas of the law where litigation has been deemed frivolous. You're saying that because this is patent litigation, there must be misconduct of the traditional kind of attorney misconduct in order for the litigation to be deemed frivolous? No, Your Honor. But if there isn't litigation misconduct, then two things must be found. As the Court has repeatedly found, if there's no inequitable conduct, no litigation misconduct, you must find subjective bad faith in bringing and maintaining the action and objective baselessness. Okay. You're not understanding Judge Newman's question, I don't think. What Judge Newman is saying is that... I think he understands. Yeah. In other areas... Yes. ...if a Court finds objective baselessness... And you can find the matter to be frivolous under Rule 11 or under 1928, but is it your position that because it's patent law, we need something else? In the absence of litigation misconduct, traditional litigation misconduct, yes, you need subjective bad faith, as this Court has repeatedly found in all of those cases. Two requirements. In Brooks, for example, finding no subjective bad faith after concluding there was no litigation misconduct, the Court never reached objective baselessness. In other cases, the Court went in the reverse order, found no objective baselessness, didn't need to address the issue of subjective bad faith. So, again, to be within what the Court has said is necessary to grant an award of fees recognizing the serious economic and reputational consequences of such sanctions, first we have to find out, was there litigation misconduct? If there was not, then there must be a finding by the District Court of subjective bad faith, which this District Court did not believe was the law. Well, we've got plenty of cases that don't refer to a subjective, don't characterize the test necessarily as being subjective bad faith. Let me just ask you, if you take, certainly we've read the District Court's opinion, there are two places in which he rejects subjective bad faith as a standard. Yes, Your Honor. But if you remove those two phrases, aren't his conclusions and his observations and his findings with respect to frivolity and bad faith sufficient to satisfy that standard in any event? No, Your Honor. Why not? We submit not. In our opening brief, in our blue brief, we trace back the cases, for example, the Court relies exclusively on Digio. If you read Digio, Digio cites Forrest. All the other cases go back to Forrest. And when you read them all in context, as opposed to snippets, where the issue didn't arise as to litigation misconduct, what you find is, I believe, as I have tried to answer Judge Newman's question, that frivolous litigation is synonymous with subjective bad faith and objective baselessness unless there is first a finding of litigation misconduct. So even though there are cases that do not address the, that just talk in broad terms as to vexatious litigation, frivolous litigation, baseless litigation, there is implicit a requirement of subjective bad faith, not pure objective baselessness. If objective baselessness were the sole test. Well, he found bad faith. He says bad faith, but he never enumerates what acts constitute bad faith. In contrast, for example, to LTEC, where an overwhelming basis, this Court recognized that the district court there set forth an overwhelming basis. Well, let's assume we disagree with you and we think that he set forth sufficient findings to support his finding of bad faith. Why isn't that sufficient to satisfy the standard? Well, in this particular case, Your Honor, if I may, I will take each assertion of subjective bad faith or litigation misconduct that was asserted and explain why, if indeed that is the basis, it is neither litigation misconduct nor did it actually happen. And I think the most clear example of that is the district court made a finding that, and this is something the court relies on heavily, that MARCTEC purportedly mischaracterized the court's claim construction. Well, if you review the chronology of how this transpired, what the district court relied on for that, if you trace back through the district court's findings on the fee petition back to the district court's findings in support of summary judgment, what you find is the statement that MARCTEC mischaracterized the claim construction ultimately relies for support on statements that were made months, months before the claim construction had ever been issued. MARCTEC made a single submission after the court's claim construction order in March of 2009. In that submission- All right. Well, let's assume we put that one aside. Okay. Let's assume that that, even if it happened, wouldn't be enough. What about- We can go to the next one. Let's go to the next one. The next one is the contention that MARCTEC mischaracterized the claim construction law. Now, there, as we point out in our briefs in reading back to the submissions by MARCTEC, MARCTEC cited, quoted from faithfully, the Phillips decision. There are a couple of places where MARCTEC counsel advocated certain positions on claim construction law, which were countered by Cordes' lawyers, and which the court rejected. The court didn't acknowledge other parts of- Phillips is a decision that has a little something in it for everyone, and there were sections of Phillips that supported fully MARCTEC's argument that as to certain of the limitations here, most notably the bonded limitation- What about the expert evidence that was submitted? The expert evidence that was submitted was submitted, again, before the court adopted its claim construction. It was directed at rebutting what was Cordes' proposed construction. Under MARCTEC's construction, which again was not rejected until March 2009 when the litigation was virtually over, under MARCTEC's construction, it was unnecessary because MARCTEC's construction- Does it matter when or what you were going to be offering it for if it was a test that had no support? Well, this court- And that the court specifically found was- It was found by the district court that it should be excludable under Daubert. This court never got to review that. during the merits appeal for the court to review that because the court focused on the bonded-by the application of heat limitation. It was MARCTEC's position then that-and it was in the Daubert briefing-that there was a basis for that evidence. Yes, the district court excluded it, but- I would say it was-the judge may have thought someone was trying to entertain the court with that kind of expertise. Your Honor, the merits of those assertions, again, were discussed during the merits appeal, even if we accept that they were- Isn't it appropriate that all of the factors are considered together for the court to decide whether something so drastic and unusual in patent litigation warrants being brought to the fore in this way? Yes, Your Honor. I think that is absolutely the law. It is correct. You must look at the totality of the circumstances. As to that particular aspect of the expert testimony that was offered in the overall circumstances of this case, it is some evidence that presumably can be relied on. Not a single case has been cited where excluded evidence-evidence excluded under Daubert-was considered litigation misconduct. And in any event, we have-on the subjective bad faith side of the ledger-we have affirmative evidence, although it was not Marktech's burden to put it in, unrebutted affirmative evidence that their counsel and Marktech did at all times consider their position, particularly on claim construction, to be appropriate. If the court were to find that the expert testimony was inappropriate, was properly excluded under Daubert, that's some evidence. Does that convert this entire case into the type of case where there is typically going to be unethical or unprofessional conduct to warrant sanctions of close to $5 million, including the expert witness fees here of $800,000 based on nothing more than the same standard that was applied? All the court needs to do on that score is compare the conduct here that was held sufficient to warrant expert witness fees with the conduct in the Amstead case where fees weren't even awarded, were rejected to realize that this case is in a different universe when it comes to the egregiousness or alleged egregiousness of the conduct. We're well into your rebuttal time, but we'll save it. Let's hear from the other side. Thank you, Your Honor. Mr. Diskage. Thank you, Judge Newman. I may have pleased the court. This was an outrageous case that was outrageously litigated, and Judge Herndon properly awarded sanctions both for bad faith litigation and for litigation misconduct. Okay, so we've got – so they're two separate things. I mean, the rub, as we all know, in – with respect to the frivolity issue is that our case is referred to the need to find subjective bad faith, and that the district court, notwithstanding that he made a number of findings about frivolity and bad faith, overt – directly rejected the subjective bad faith standard. And so aren't we to assume that he therefore didn't apply it since he said it was not the law, and wasn't he required to apply it? Not with – forget litigation. Leave litigation misconduct. Well, first off, you know, at the time of the briefing, the two-part test was just emerging in this court's case law. There were many, many cases to the contrary that – Well, the problem is no case rejected subjective bad faith. And so I appreciate what you're saying. I'm just trying to explain where this came from. However, it was always, as the Movens, our interest in asking the judge to make findings on bad faith, and the reasons for that were twofold. One, that while objective baselessness may alone, under some parts of this court's case law, be sufficient for an award of fees, a fees award is a remarkable thing, and it's always better and more powerful if you have additional findings. And so we sought findings on bad faith, and the judge made findings on bad faith. And secondly, the expert fee award required findings of bad faith. So notwithstanding the fact that the judge said that under his understanding of the law, he didn't have to go further, he in fact did go further. So I don't think there's any serious doubt when you review his actual findings that what he is doing is he is focusing on what did Mark Tech know? When did it know it, and what did it do about it? And those are all findings that at core are findings that relate directly to the subjective state of mind of Mark Tech. I think he begins that analysis at the very beginning when he says, and this is on page 5 of paragraph 13. He says, Dr. Benuti amended his claims during patent prosecution to make clear that his invention required the application of heat. And then in the next sentence it says, documents produced in discovery showed that heat wasn't used in the cipher process. Now what's that reflecting? What that's reflecting is at the very beginning of this case when it was filed, we looked at it and we said, these guys must not understand. It's not public how we make our stint. Once they know that we don't use heat, they'll go away. And so at the very beginning we said, look, we read your patent, we read the prosecution history. You use heat. We don't. Here are the documents. We'll tell you how the process works. We'll let you depose our witnesses. We don't use heat. So would you please confirm that what we're saying is correct. Are you asking us to look at the record and find subjective bad faith based on his factual findings, even though he said it wasn't necessary to go there? Well, I'm asking you to find bad faith from his findings of bad faith because he marshals all of this. And then in paragraph 47, after saying he doesn't have to find bad faith, in paragraph 47 he marshals all the facts and says, look, even after Marktech had documentary evidence establishing that heat bonding is not used, and then he notes, Banuti told the patent office that it's required. So in that sentence he's saying Banuti knows heat bonding is needed and he knows that we don't have heat bonding. So this is what they knew. Marktech pursued its frivolous action by relying on mischaracterizations of the claim construction and expert testimony that didn't meet the requirements for scientific reliability. Whereas here, the patentee is manifestly unreasonable in assessing infringement while continuing to assert infringement in court and inferences proper bad faith. I read that as saying, here's all the things they knew. Here are all the things they did with what they know. Find bad faith. But is that objective bad faith or subjective bad faith? Judge, I don't even know what objective bad faith is. I mean, to me, the difference in the court standard is objectively baseless. To me, that's a reasonable manned analysis. Subjectively bad faith, bad faith is what's in one's mind, what's in one's heart. I think that the reason for the subjective objective in the test is just to draw a distinction between the two modes of thinking. But I can't comprehend what bad faith is other than what he's saying here, which is Marktech did these things knowing they were baseless. Are you also contending that findings of litigation misconduct support these conclusions? Yeah. The findings of litigation misconduct are also laid out, and they appear in Section 5 of the court's opinion. And he talks about claim construction, and Dr. Palmaz's stint, and the facilitation evidence, and the inadmissible evidence. And what's the headline? Mischaracterizations of the fact in the law. This court's case law is very explicit that mischaracterizations, misrepresentations to the court of facts and law are litigation misconduct. And that's what these findings are. And then later he refers to all this activity as escalating our fees. And, of course, it did. I mean, what was really incredible was not simply that they proffered an absurd claim construction to take heat out of the process. But then, and if they had just done that and lost, I promise you we wouldn't have been here because that would have taken 10 minutes and we would have been done. But what made this case so expensive was their extraordinary assertion that even though heat was now required as part of the claim construction, that they were going to prove somehow that we infringed using these ridiculous tests. And so we had to spend lots of money. And, you know, you say they're ridiculous tests. Who's going to take them seriously? We're talking about $100 million claims against the company's most valuable product. I mean, we took these seriously because they were presenting them seriously and aggressively. And so they first had an absurd claim construction issue. Then they completely distorted what the judge found on claim construction. And I must say that while the initial round of briefing was while we were proposing the construction before it was adopted, it continued after it was adopted. They submitted findings of fact after the judge adopted it, repeating their same absurd arguments. So all of this was litigation misconduct. The judge specifically excluded the portions of your proposals that contained findings of litigation misconduct. Now, I know you take the position that they were somehow cumulative of his factual findings, but they were the specific findings that related to litigation misconduct, weren't they? If you look at them, and I urge you to do that, they are duplicative of the factual findings. But they are phrased differently. He makes factual findings. Your proposal was to have him say, based on these factual findings, I find litigation misconduct. And that's what he took out. I think it's very hard to overanalyze the judge's thinking in editing this document. I think that he could easily, I think he did easily view it as duplicative of what's there, because he repeats the conclusion that there was litigation misconduct. He just doesn't have a whole section in which he repeats the findings that he's previously made. How do you respond to the fact that the only place he mentioned litigation misconduct was in connection with the fee award? Uh-huh. The only time he used those words. I see it as a reference to what he found. I mean, to me, to me, their argument, you know, ordinarily one doesn't have drafts of judges' documents to parse through and, you know, see what's in and what's out. I think he read this document as a whole, and I think it's the judge's opinion that stands on its own two feet under the case law in the Seventh Circuit. And we read what the judge had to say, and the judge made a whole section addressing misrepresentations. Now, that's not objective facelessness. Misrepresentations relates only, only to subjects of bad faith and misconduct. But there was a specific statement that was excised that said during the course of this litigation, Bartek engaged in various forms of litigation misconduct. Those specific words were excised from his findings. Are we to assume that's not meaningful? I think I would, the only conclusion I can draw from it is that the judge thought that section was redundant to what was already there. You go back and ask him. But dealing with the, you know. Well, I'm sure your opposing counsel would say that the conclusion we should draw from it is because he wasn't willing to make that finding. But I think that doesn't square with the fact that he says there's litigation misconduct. I mean, to me, if you have to decide, did he think it was redundant, theory one, or theory two, no, he thought that was incorrect. I think the fact that in paragraph 50 he says that the fees were reasonable in light of their litigation misconduct, coupled with the factual findings of litigation misconduct, make it pretty clear to me that that's what he did. But either way, I mean, whether you look at it as litigation misconduct or you look at it as bad faith, we've got an objectively baseless case pursued in bad faith as found by the district court. And his findings, you know, I think your court said something wise and relevant in the DiGio case dealing with similar findings. Though the court did not expressly find that the plaintiff knew its suit was baseless, many of its findings are compatible with only that view. And you affirmed. And I think that's the same thing here, that he found it was in bad faith. He found it was in bad faith after reciting many, many things that they did in the court that accumulated. It's not just one thing. We wouldn't be here over just one thing. But this case became extraordinarily expensive because Martek just wouldn't let go. It wouldn't look at the evidence and say, gee, sorry, we made a mistake. It wouldn't look at the evidence and say, well, we have a claim construction issue we'd like to present. And if we lose that, we'll go away. It was in for the whole ball of wax based on just absurd, embarrassing litigation tactics. On the expert witness fees, isn't our law pretty clear that the judge has to make additional findings beyond those that would support a finding for attorney's fees? In this case, there's only about a page. The law is that there must be bad faith to support it. And there's certainly law that says, and he certainly did that. So I don't think we have any doubt that he found that there was bad faith. I don't think there's anything in the law that requires additional findings by the district court beyond that. I think a reviewing court has said that we're looking for more than ordinary bad faith. And I think that's fair. In fact, there's a case law that talks about defiling the temples of justice. And we're talking, what's Daubert all about? I mean, to me, we all deal with science. I mean, the very area where we all know that lay juries hear lousy scientific evidence and they are confused and they don't know which way to go. And so Daubert, to me, is designed to protect the temple of justice from bogus science. But under your theory, then, any time that a determination was made that attorney's fees were appropriate and objective baselessness and subjective bad faith were found, that expenses would automatically be permissible. Not at all. I'm not remotely saying that. What I was saying was if you can have lots of bad faith, it doesn't involve misuse of science. But to me, the thing that first, much of the expertise were directed at the scientific evidence. And secondly, the most revolting feature of this from the standpoint of the administration of justice was having litigants come forward with evidence that doesn't pass any smell test. And if you want to think about why does the court sit as an intermediary? I mean, I suppose we were joking last night. You could say the court prevented the temple of justice from being defiled by throwing out the evidence. But I think that's what this is. This is an attempt to defile the temple of justice with disgusting evidence, which if presented to juries would have unpredictable effects. And I think it's entirely appropriate where expert fees have had to be expended to demonstrate the falseness of evidence of that sort for the party that had to bear that cost to have that reimbursed. So, are there no more questions? Mr. Diskin, any more questions? Thank you very much. Thank you, Mr. Diskin. Mr. Miller. Thank you. Can I just ask you up front, is there such a thing in your view as objective bad faith? Objective bad faith. Right. I mean, isn't bad faith necessarily subjective rather than objective? I believe it is, Your Honor. I believe that bad faith, when it's used in the cases, and that's why we contend that the standard in Forrest, which everyone seems to derive back to, that references in the case law which don't use the word subjective do mean subjective bad faith. Now, a couple of points here, Your Honor, and Your Honor pointed out the excising of the section of the judge's opinion. But even before the entire section was excised, in paragraph 46, before we get to that section, there was a single paragraph that shows how carefully the judge wanted, in our view, to not go so far as court has wanted it to go to say there was bad faith here. If you compare paragraph 46 of the proposed findings as originally submitted, and that would appear in the appendix at A7431 through 32, with what the judge actually found at A19 through 20. And again, this is not in the section. This is just a paragraph where the judge excised the words. In addition, there is ample evidence of Mark Tech's bad faith in filing and maintaining this baseless action. The judge went to the trouble to take that one sentence out of a finding. We think that speaks volumes about what Judge Herndon actually believed as to whether there was litigation in this conduct. Although he did leave the conclusion of bad faith, is it possible he was trying to shield the attorneys as individuals from disciplinary action? Perhaps, Your Honor. Again, I certainly agree that we don't know exactly what was in the judge's mind. But I think there are certain things that can be inferred from specific things that he did. And I would contrast again what Judge Herndon did with what the district judge did in LTCH, where he spelled out in overwhelming detail the acts that he believed were litigation in this conduct. The acts were there. We have addressed why we believe the acts themselves are not what they purport to be. Mr. Glertner again said that we distorted the claim construction, that we continued after the claim construction. Again, the record speaks loudly that we didn't do that. The claim construction came, one submission, which was only a response to new proposed findings. On the expert testimony that Your Honor questioned me about, at the end of the day, that was largely excluded because it was irrelevant under the claim construction adopted by the Court. And as to that, Marktech maintained early in the case and throughout, right up through the appeal, that its construction of bonded, based on the word bonded, which was not modified at all, was an appropriate construction. Yes, Marktech lost. This Court found that the prosecution history militated in favor of Cordes' proposed construction as adopted by the Court, which, by the way, changed over time. It began bonded by the application of heat. Eventually, it was reinterpreted to be where the bond itself was caused by heat. But significantly, we believe, this Court, in affirming the district court, held oral argument, rendered an opinion, in which, in response to Marktech's claim differentiation argument, in which it said, if you don't look at Claim 8 of the patent, which adds the exact words by the application of heat, it would render it superfluous. Now, the Court rejected that. We all know that claim differentiation, you don't want the tail to wag the dog. But the Court acknowledged that perhaps it does. Perhaps it does render it superfluous. I don't think that was acknowledged in that case. What's your response to Mr. Diskett's discussion of that, once it became absolutely clear that heat was not involved in their process, that that should have ended the litigation? Again, under Marktech's proposed construction, under Marktech's proposed construction, Your Honor, how the device was manufactured didn't matter. Marktech maintained through the appeal that the construction adopted by the Court, and again, we acknowledge it was rejected, imported method limitations into the claim, violated claim differentiation. So under Marktech's proposed construction, being told that there was heat didn't change anything. Now, in fact, even with the Court's original, except, I'm sorry, I should say, even with the original proposed construction to the Court, and the one that actually is present in the Markman ruling as opposed to in the ultimate summary judgment ruling, it said application of heat. And Marktech had learned that there was heat, and addressed that. But most importantly, Marktech always maintained, I'm sorry? That there was heat? That there was heat at various parts of the process. But not in the bonding? In Marktech's view, and again, I'm not here to argue the correctness or lack of correctness of the expert testimony, that it facilitated the bonding. That's behind us, I agree. That is. But couldn't the Court have considered, I mean, not couldn't, it seems that the Court did consider that entire structure in deciding whether the litigation became objectively basis after the facts of the process became known? Well, Your Honor, at that point in time, and frankly, up until March of 2009, when Marktech's proposed construction, which was bonded, it is that by the application of heat is our preferred embodiments, that there was no clear disavowal. None of that has yet been rejected. Why should Marktech be found to have been objectively baseless when the words of the claim itself, bonded, the presence of claimant, by the application of heat? Well, what about the fact that you disclaimed Stentz? Your Honor, we did not disclaim Stentz. The judge found that you did, as a matter of fact. The judge did find that we did, and again, that is another finding that we consider to be clearly erroneous. The statement in the prosecution history on which the Court relied to suggest that Marktech purportedly disclaimed Stentz is an incredibly misleadingly cropped quote from the prosecution history. If you look at page 833 of the Court's opinion, paragraph 35, you will see a very short paragraph, what appears to be a paragraph, from the prosecution history. The full text of the prosecution history on that score is found much later. It's in the record at page A7476. What was cropped there was a sentence from the first paragraph, 50 or so words that completed that paragraph, and the beginning sentence of the next paragraph, which made it sound like the disclaim was far broader than it was. What was disclaimed was what was shown in Palmas. You're saying it was cropped by the district judge? It was cropped by Cordes, proposed to the district judge, and adopted verbatim. And despite your argument that there was more to it than that which Cordes pointed out? Yes, Your Honor. That is correct. I'm reluctant to have us get into the cases that have previously been decided, although I appreciate they relate to the objectively baseless argument. And I think, Your Honor, just to round that out, what was disclaimed and what was argued was, whether you call what Palmas had a stent, whether you call Cipher a stent, whether you call what was claimed in Martec's patent stents, it's the structure that counts. We had an argument that even the words, surgical device, implant, et cetera, were preamble terms anyway. The distinction that was argued was that, and no one disputes this, the Palmas patent disclosed a device that had material placed upon it. No bonding. It is absolutely incontrovertible that Martec had material bonded to it. We know that's been limited to bonded by the application of heat. But no one disputes that Cipher had bonded material and therefore differed from Palmas. So to say that, as the district court did, that we disclaimed everything, all stents for all time, is an overstatement, and it certainly isn't litigation misconduct, which would dispel the requirement that someone find, that the district court find, that when Martec proceeded from day one, it's objective and tentative. All right. Well, we appreciate that there were arguments. Thank you, Your Honor. Sorry for overstepping my time. The case is taken under submission.